UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:

ROBERT EARL CARTER and,
CASANDRA IVELISSE BARRAL BORGOS,

Case Number: 18-13695-7

Debtors.

---

ROBERT E. CARTER and
CASANDRA IVELISSE BARRAL BORGOS,

Plaintiffs,

v.

Adversary Number: 26-00075

INTERNAL REVENUE SERVICE,

Defendant.

---

**DECISION**

Robert Earl Carter and Casandra Ivelisse Barral Borgos ("Debtors") filed a bankruptcy case on November 2, 2018.[1] The Internal Revenue Service ("IRS") filed proof of claim no. 55 on July 22, 2019, and amended it on December 19, 2019. The Court granted Debtors a discharge ("Discharge Order") on August 12, 2020.

Almost six years[2] later, Debtors filed:

---

[1] The case was filed as a Chapter 13, converted to a Chapter 11, and then eventually to a Chapter 7.

[2] The Motion to Reopen and for Sanctions was filed on September 29, 2026. Dkt. No. 366.

1. Motion to Reopen Chapter 7 Case and for Sanctions and Contempt for Willful Violations of the Bankruptcy Injunction; and
2. Motion to Expedite Hearing.[3]

Granting the request for setting an expedited hearing, the Court held a preliminary hearing two days after the filing of the Motion to Reopen. It granted the request to reopen the case.[4] A preliminary hearing was also held on the Motion for Sanctions at the same time. The Court scheduled another hearing to be held on October 15, 2026.

On October 2, 2026, Debtors filed an Emergency Motion for Preliminary Injunction and Temporary Restraining Order Pending the October 15, 2026 Hearing ("TRO Motion").[5] The Court accommodated the request for emergency relief by scheduling a preliminary hearing to be held on October 5, 2026.[6] The Court denied the TRO Motion.[7]

The next day, Debtors filed an adversary proceeding against the IRS ("Adversary Proceeding").[8] A Motion for Temporary Restraining Order and Preliminary Injunction was also filed in that proceeding.

A hearing on the motion in the Adversary Proceeding was also scheduled for October 15, 2026. The hearing proceeded, arguments were presented, and

---

[3] Dkt. No. 367.
[4] Dkt. No. 377.
[5] Dkt. No. 379.
[6] Dkt. No. 380.
[7] Dkt. No. 391.
[8] Adv. Proc. No. 26-75.

the Court denied the Motions for Temporary Restraining Order and Preliminary Injunction ("TRO/Injunction Motions") in both the main case and the Adversary Proceeding.[9]

Debtors have now filed a motion requesting that Judge Furay recuse herself from the case.[10] On the same day, a Notice of Appeal was filed seeking appeal of the October 5 and 15 Orders that denied temporary restraining orders and preliminary injunctions.

Debtors' Motion for Disqualification and Recusal contains detailed legal argument related to their basis for the request. The IRS filed its objection to that motion.[11] Debtors replied in support of the motion.[12]

This constitutes the decision of the Court with respect to the Motion for Disqualification and Recusal.

## FACTS

In amended schedules filed on February 11, 2019, Debtors listed the IRS for a claim in the amount of $985,000 incurred April 15, 2011.[13] That amount was identified as "contingent." In the amended schedules, Debtors also listed the Department of Justice with a claim of $1,452,150. It was identified as contingent.

---

[9] Dkt. No. 401; Adv. Proc. No. 26-75, Dkt. No. 13.
[10] Dkt. No. 402.
[11] Dkt. No. 415.
[12] Dkt. No. 416.
[13] Dkt. No. 60 at 1.

The IRS filed a proof of claim totaling $1,938,114.37. This amount included:

- $943,064.65 as secured, which consisted of a tax lien recorded on September 16, 2016, arising from Mr. Carter's 2009 and 2010 tax debts;
- $499,875.63 as priority; and
- $495,174.09 as general unsecured.[14]

As noted, a portion of the debt was first listed as secured. On September 13, 2019, an adversary proceeding was filed by Debtors against the IRS.[15] The adversary requested a determination that the tax liability for 2010 be determined dischargeable and that the lien of the IRS be determined in the case to be unsecured. It also sought bifurcation of the claim into secured and unsecured portions.

A Motion to Dismiss the adversary was filed. Hearings were held. Debtors failed to appear at the pretrial conference and preliminary hearing on the Motion to Dismiss.[16] Those hearings were rescheduled.[17] Finally, on March 12, 2020, Debtors again failed to appear, but their attorney in the main case did appear. He reported the Debtors had "not provided the signed affidavits as they said they would, but that he does not oppose dismissal of th[e] matter

---

[14] Claim No. 55-1.
[15] Adv. Proc. No. 19-68.
[16] *Id.* at Dkt. Nos. 12 and 13.
[17] *Id.* at Dkt. Nos. 18 and 19.

pursuant to the debtor's statements at the March 5, 2020, hearing."[18] No opposition was presented to dismissal of the adversary proceeding, and it was dismissed.[19]

Debtors had objected to the IRS claim on October 30, 2019. Debtors withdrew the objection less than a month later, stating that the objection would be resolved in the adversary proceeding.[20] During the pendency of the adversary, negotiations occurred between the IRS and Debtors. The IRS amended its proof of claim to classify the 2010 tax debt as nonpriority, unsecured on December 19, 2019.[21]

A discharge was issued on August 12, 2020. The case was closed on August 19, 2020.[22]

Almost six years later, Debtors moved to reopen the case saying that Debtor Barral Borgos and her mother were pursuing refinancing of the mortgage on real estate the Debtors owned.[23] While working on a refinancing, the existence of an IRS lien was discovered.[24] Debtors understood that the lien might impair or prevent the refinancing and believed both that the tax liability

[18] *Id.* at Dkt. No. 26-1.
[19] *Id.* at Dkt. No. 26-1.
[20] Dkt. No. 320.
[21] Claim No. 55-2.
[22] Dkt. No. 365.
[23] Dkt. No. 366 at 2 ¶ 7.
[24] *Id.* at ¶ 6.

was discharged and that, if discharged, it also prohibited and voided any federal tax lien.[25]

Debtors told the Court that the refinancing would refinance the existing first mortgage and pay unpaid real estate taxes and closing costs. In addition, there would be net proceeds in the amount of $67,495.17 from the refinancing to disburse to Debtors.[26]

Debtors' TRO Motion asked that the Court require the IRS to release the tax lien and prevent it from taking other collection actions that would interfere with the loan disbursement to them.[27] At the hearing on October 5, 2026, Debtors represented that the closing company would conduct a run-down lien search but still disperse the funds of the mortgage.[28] Because there was no immediate harm to the Debtors and that the IRS would suffer harm instead if proceeds were disbursed to Debtors but it was later determined the IRS lien was valid and enforceable, the Court denied injunctive relief. *Id.*

A day later, Debtors filed the Adversary Proceeding and another motion for preliminary and injunctive relief on the basis that the Debtors suffered harm from the loan falling through.[29] For the sake of efficiency, the Court

---

[25] *Id.* at 2 ¶ 5.
[26] Dkt. No. 389 at 3.
[27] Dkt. No. 379.
[28] Dkt. No. 391.
[29] Dkt. Nos. 390, 398.

decided to hear the new motion on the same day as the continued hearing on October 15, 2026.[30]

Injunctive relief was denied in the main case. The Court determined the facts should be considered and decisions made in the Adversary Proceeding and denied preliminary injunctive relief in the adversary.

On October 16, 2026, Debtors filed this motion requesting recusal of the Judge in the main case and in the Adversary Proceeding.[31] The IRS objected to the Motion for Recusal or Disqualification on October 26, 2026.[32] Debtors responded to the objection the next day.[33]

## Discussion

Federal Rule of Bankruptcy Procedure 5004(a), incorporating 28 U.S.C. § 455, provides for a judge's disqualification in a bankruptcy case. The relevant provisions of section 455 state as follows:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

28 U.S.C. § 455(a) and (b)(1). These sections differ from each other in that section 455(a) addresses the *appearance* of partiality, while section 455(b)(1)

[30] Dkt. No. 401.

[31] Dkt. No. 402 and Adv. No. 26-75, Dkt. No. 16.

[32] Dkt. No. 415.

[33] Dkt. No. 416.

addresses *actual* partiality. *Snyder v. Acord Corp.*, 811 F. App'x 447, 470 (10th Cir. 2020).

A. Disqualification Under 28 U.S.C. § 455(a)

The standard for a finding of perceived bias under section 455(a) is whether a reasonable person would perceive a significant risk that the judge will resolve the case on a basis other than the merits. *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996). The risk must be one that is substantially out of the ordinary. *Id.* The party moving for recusal has the burden of producing facts which would raise doubts about the judge's impartiality. *In re Betts*, 165 B.R. 233, 238 (Bankr. N.D. Ill. 1994).

Adverse judicial rulings alone “almost never constitute a valid basis for a bias or [section 455(a)] partiality motion.” *Liteky v. United States*, 510 U.S. 540, 555 (1994). Judicial rulings, instead, are proper grounds for appeal. *Id.* Moreover, “opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion.” *Id.*

A carve-out exists when these opinions “display a deep-seated favoritism or antagonism that would make fair judgment impossible.” *Id.* An example of such extreme prejudice is where a judge made disparaging comments about German Americans, saying that their “hearts are reeking of disloyalty.” *Id.* On the other hand, rejection of a party's arguments, speaking harshly, or other expressions of impatience, dissatisfaction, or annoyance are considered within

the bounds of "ordinary efforts at courtroom administration" and remain immune. *Id.* at 556.

Debtors disagree with the Court's rulings on their TRO/Injunction Motions. They have confirmed that disagreement by exercising the right to appeal those rulings.

Debtors' recusal motion asserts that the Court displayed a "deep-seated antagonism, bias, and prejudice…making fair judgment impossible under the *Liteky* standard," demonstrated by (1) the Court's adverse rulings and (2) perceived hostile conduct towards Mr. Carter.[34]

Debtors allege the IRS referenced prejudicial and irrelevant details about Mr. Carter's criminal history and other false statements. They assume the denial of the TRO/Injunction Motions was the result of these references and statements.

Yet Mr. Carter himself also commented on his incarceration and its impact on timing and discussions with the IRS regarding the 2010 taxes. He explained that while he is an owner of the property subject to possible refinancing, he is not a borrower because the terms of his probation or parole prohibit him from entering into financing or loan transactions.

Debtors allege that the references to Mr. Carter's criminal history and other unspecified false statements led the Court to blindly grant the IRS a presumption of correctness, to insulate it from mandatory evidentiary burdens,

[34] Dkt. No. 402 at 8-9.

to refuse to inspect evidence, and to ignore credible and indisputable evidence. But the Court considered the alleged facts, legal argument, and applicable law before reaching decisions on the TRO/Injunction Motions.

Adverse judicial rulings are not a basis for recusal. First, the record does not show a shift in attitude when evidence of Mr. Carter's criminal history was introduced. On multiple occasions, Mr. Carter referenced his own incarceration as it related to events surrounding the tax filings and refinancing of the mortgage. These details were not prejudicial or relevant to the decision on whether or not to grant a temporary restraining order or preliminary injunction.

Second, the perceived favoritism towards the IRS is speculation. The Court considered the arguments of both parties and the factors to be applied to requests for relief to preserve the status quo pending a trial. Denying the TRO/Injunction Motions does not conclude or dismiss the opportunity for both the Debtors and the IRS to appear, prepare, and present evidence and legal argument. That is the reason there is an adversary proceeding with procedures and a process for the presentation of evidence and law.

What Debtors call "indisputable evidence" is being disputed. Debtors want a declaration that a tax liability was discharged when there was no order specifically addressing dischargeability of the tax liability. Further, assuming the personal liability for the tax was discharged, Debtors seek an order avoiding any existing or future tax lien. This implicates considerations of tax law and regulations regarding creation and existence of a tax lien.

A temporary restraining order is a form of pretrial injunctive relief. It is reserved for circumstances in which the applicant can show that he or she faces real and immediate irreparable injury before the court can consider and hear a noticed motion for preliminary injunction. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Its purpose is to preserve the status quo. *Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 160 (3d Cir. 2020); *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999).

Debtors' request, however, would not have had the effect of simply preserving the status quo. The status quo is that the Debtors own real estate. There is a mortgage and real estate taxes due on that property. A federal tax lien is also of record. The IRS indicated it did not object to refinancing of the first mortgage or payment of real estate taxes. But it took the position its tax lien entitled it to any proceeds of the refinancing that exceeded those payments.

At the October 5 hearing, the Debtors' TRO Motion sought an order directing release of any excess funds to them. The Court denied the TRO Motion finding that if, as Debtors stated, the lender was prepared to proceed, then holding any proceeds in excess of the first mortgage and real estate taxes would have the effect of preserving the status quo pending a trial and obviate the need for the proposed order.

At the October 15 hearing, Debtors presented a list of additional proposed recipients,[35] including a second mortgage, a car loan, and various collection and credit accounts. The priority or nature of these claims does not appear in the record before this Court. It is possible that some or all of these additional proposed recipients may have claims that arose after the discharge or were reaffirmed by Debtors. Those debts may or may not be subsequent in time to the IRS lien or have liens on the real property.

A preliminary injunction is a form of pretrial injunctive relief. It is reserved for circumstances in which the applicant can show real and immediate irreparable injury before a trial can be held. In other words, it is a tool to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 627 (5th Cir. 1985); see *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

A preliminary injunction is also an extraordinary remedy. *Starbucks Corp. v. McKinney*, 602 U.S. 339 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Like a TRO, it preserves the relative positions of the parties until a trial on the merits can be held. *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004). It does not replace a trial.

The considerations for granting a preliminary injunction are well established. The default rule is that a plaintiff seeking a preliminary injunction

---

[35] Dkt. No. 399 at 3-4.

must make a clear showing that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Starbucks*, 602 U.S. at 346 (quoting *Winter*, 555 U.S. at 20, 22). "Of all of these factors, the likelihood of success on the merits ordinarily carries the most weight." *Minocqua Brewing Co. LLC v. Hess*, 160 F.4th 849, 855 (7th Cir. 2025) (quoting *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 771 (7th Cir. 2023)).

In preparation for the hearings, the Court reviewed all the filings made by the Debtors and the IRS. It considered the arguments at each hearing. The review included over 200 pages of filings by Debtors, including:

| | |
|---|---|
| Motion to Reopen Chapter 7 Case and for Sanctions and Contempt for Willful Violation of the Bankruptcy Injunction. Dkt. No. 366. | 22 pages |
| Motion to Expedite Hearing on Debtor's Emergency Motion to Reopen Case and for Sanctions. Dkt. No. 367. | 10 pages |
| Debtor's Definitive Statement of Facts in Support of Motion for Civil Contempt and Sanctions Against the Internal Revenue Service. Dkt. No. 372. | 14 pages |
| Motion for Preliminary Injunction and Temporary Restraining Order Pending the October 15, 2026, Hearing. Dkt. No. 379. | 20 pages |
| Affidavit of Robert E. Carter in Support of Debtor's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction Demonstrating that a 2010 Tax Return Was Filed. Dkt. No. 385. | 42 pages |
| Additional Exhibits in Support of the Motion for Temporary Restraining Order and Temporary Injunctive Relief. Dkt. No. 389. | 13 pages |
| Complaint. Dkt. No. 390. | 10 pages |
| Debtor's Memorandum of Law and Additional Evidence in Support of Debtor's Emergency Motion for Sanctions, an | 63 pages |

| | |
|---|---|
| Order Voiding the Illegal Tax Lien, and Immediate Injunctive Relief. Dkt. No. 395. | |
| Motion for Temporary Restraining Order and Motion for Preliminary Injunction Due to the IRS Invalid Lien Causing Refinancing Funding on October 5, 2026. Dkt. No. 398. | 18 pages |
| Affidavit of Robert E. Carter in Support of Debtor's Emergency Motion for Temporary Restraining Order and Preliminary Injunction Because the Lien has Collapsed Lender Financing. Dkt. No. 399. | 9 pages |

The Court reviewed each of the factors for issuance of a preliminary injunction. It concluded that, as the movant, Debtors did not satisfy each of those requirements.

Based on the record presented at those hearings, Debtors admitted they did not file Form 1040 for 2010. Instead, some form that adjusted the amount assessed was apparently signed and returned. Whether that constituted the filing of a return under 11 U.S.C. § 523 was not determined.

If the personal liability for unpaid tax was discharged, there remains the question—particularly in light of the dismissal of the adversary proceeding in which Debtors sought a determination that the taxes were discharged—whether there is a lien that is enforceable. In other words, to be effective does a federal tax lien require filing and notice to be perfected and enforceable? Does a purported tax lien pass through bankruptcy? So the facts and law were not sufficient to conclude there was a likelihood of success on the merits. That leaves the issues for trial in the Adversary Proceeding.

Considering the harms and balance of equities, the consideration of whether to grant a preliminary injunction weighed in favor of denial of the TRO/Injunction Motions. While there appeared not to be any dispute about

payment on the first mortgage or payment of the real estate taxes, the facts weighing against the Debtors were uses of the remaining proceeds estimated to be $67,495.17.[36] At first, they said those funds would be paid to them. No protection for or preservation of those funds pending a trial were suggested. Debtors took the position that releasing those funds to them would mean there was not and could be no lien against that money.

At the second hearing, the facts changed slightly. In addition to payment of the first mortgage and any real estate taxes, Debtors said the following disbursements would also be made:[37]

(a) Payoff a 2nd Mortgage to HUD in the amount of $72,997.41 through loan remodification during the underlying bankruptcy proceeding;

(b) Payoff the First Mortgage to Rocket Mortgage in the amount of $173,750.82;

(c) Payoff a vehicle loan to Bridgecrest Finance in the amount of $42,429.19;

(d) Payoff a collection account to Vance & Huffman in the amount of $2,095.26;

(e) Payoff credit account to Get It Now in the amount of $1,344.52;

(f) Payoff collections account to Jefferson Capital Systems in the amount of $752.78;

(g) Payoff collections account to Jefferson Capital Systems in the amount of $877.00;

(h) Payoff a collections account to Midland Credit Management in the amount of $910.00;

[36] Dkt. No. 379 at 1.

[37] Dkt. No. 399 at 3-4 ¶ 10.

(i) Payoff a collections account to Midland Credit Management in the amount of $1,049.00;

(j) Payoff a collections account to LVNV/Resurgent Capital in the amount of $1,046.66; and

(k) Payoff a collections account to Portfolio Recovery Associates in the amount of $817.

In sum, the Debtors were seeking an order that would have disbursed all of the refinancing proceeds—whether on debt incurred before or after the tax assessment and any liability to parties other than the IRS—leaving no amounts available if the IRS lien is not avoidable pending a decision on the merits. It is unclear when or whether each of these other amounts were incurred or if they have any security interest. Whether the IRS lien exists or is enforceable has not been determined.

Rule 65 governs temporary restraining orders and preliminary injunctions. It provides:

> **(c) Security**. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

Fed. R. Civ. P. 65(c).

Based on the plain language of these provisions and the fact that the Debtors did not propose security in an amount that would protect the amounts that would be due to the IRS if its lien is enforceable, the Court was not fabricating its inability to grant injunctive relief in the main case. The Court's powers under 11 U.S.C. § 105(a) to enforce its orders may be broad, but they

are not without limits. Debtors did not propose placing the amounts net of the first mortgage and real estate taxes in escrow pending a decision on the merits. To the contrary, they wanted an order that would pay out those amounts to several other creditors.

The perceived hostile conduct included the Judge raising her voice at Mr. Carter, cutting him off, and prohibiting him from making a clear record. All hearings were conducted over the phone. Parties cannot see physical cues indicating that the Judge is speaking. Telephone calls may also result in people interrupting or speaking over others. This can make the record unclear at times. Raising the Judge's voice and cutting a speaker—including Mr. Carter—off, even if expressing impatience, dissatisfaction, or annoyance, are common in phone hearings and do not establish hostility. Counsel for the IRS also interrupted the Judge. In response, the Judge also interrupted them and admonished the attorney not to interrupt the Court. This conduct is well within the bounds of acceptable courtroom administration. *Hook*, 89 F.3d at 355.

As for prohibiting Mr. Carter from making a clear record, the Court stopped Mr. Carter from speaking to avoid repetitive argument. Mr. Carter was asked if he had anything to add to what he had filed. Mr. Carter was not adding any additional argument that was not already presented in over 200 pages of filings, as identified above.

Applying the above standards to this matter, the Court finds that the Debtors' contentions do not form a sufficient basis to reasonably question the Court's impartiality in the mind of an objective, disinterested observer.

B. Disqualification Under 28 U.S.C. § 455(b)(1)

The test for actual bias under section 455(b)(1) is whether a reasonable person would be convinced of the judge's bias. *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse–Wis., Inc.*, 991 F.2d 1249, 1255 (7th Cir. 1993). Actual bias or prejudice must be alleged and established by compelling evidence. *United States v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir. 1985). And that bias must arise from an extrajudicial source. *Hook*, 89 F.3d at 355.

The moving party has the burden of proof. *Betts*, 165 B.R. at 238. Bias arising from an extrajudicial source is a factor in determining the appearance of partiality under section 455(a). The motion does not claim there is bias from any “extrajudicial source.” No compelling evidence has been presented.

Instead, in managing the presentation of arguments the Court sought to: (1) avoid extended duplication of arguments presented in voluminous filings or at a prior hearing; (2) provide an opportunity for the IRS to respond at expedited hearings; and (3) create a clear record that avoided interruptions and preserved the normal respect and decorum that more easily would have occurred if the hearing was in person rather than on the telephone. Based on the record, disqualification under section 455(b)(1) has not been established by compelling evidence.

## CONCLUSION

For the above reasons, the Debtors’ Motion for Disqualification and Recusal is DENIED.

This decision constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: November 20, 2026

BY THE COURT:

____________________________________
Hon. Catherine J. Furay
U.S. Bankruptcy Judge